Commonwealth ex rel. Popovich, Appellant, *v.* Claudy.

Argued November 16, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Robert F. Burkardt,* for appellant.

*Henry R. Smith, Jr.,* Assistant District Attorney, with him *William S. Rahauser,* District Attorney, for appellee.

OPINION BY RHODES, P. J., March 24, 1952:

A petition for writ of habeas corpus was filed by relator in the Court of Common Pleas of Allegheny County on April 30, 1951, whereon a rule was granted on the warden of the Western State Penitentiary and the District Attorney of Allegheny County requiring them to show cause why the writ should not issue. Answers were filed. A hearing was held before the late Judge FRANK P. PATTERSON on June 5, 1951, who discharged the rule, denied the writ, and remanded re-

lator to the Western State Penitentiary. On June 15, 1951, relator filed his appeal in this Court.

Relator had pleaded guilty on August 21, 1941, in the Court of Oyer and Terminer of Allegheny County at No. 218, June Sessions, 1941, to the charge of burglary, and to the charge of attempted burglary at No. 847, June Sessions, 1941. He was sentenced to the Pennsylvania Industrial School at Camp Hill for an indefinite term. Testimony was taken on the pleas which were endorsed on the indictments and signed by the relator. The age of the relator was seventeen years and eight months at the time.

The petition alleges that the "Court failed to advise Petitioner of his Constitutional Rights to be represented by Counsel," and that "in view of his extreme youth and inexperience" with criminal proceedings the lack of counsel "placed him at a disadvantage which constituted a denial of Due Process under the Fourteenth Amendment to the Federal Constitution." Previous to the commission of the crimes for which relator was sentenced to the reformatory or industrial school on August 21, 1941, he had been in juvenile court on three occasions, once for larceny in 1938, and again in 1939 for burglary. By reason of the latter offense he was committed to Thorn Hill School for boys, where he remained for seventeen months.

On August 14, 1942, relator was paroled from the Pennsylvania Industrial School at Camp Hill. On February 9, 1946, he was returned to that institution for parole violation upon his release from the United States Naval prison at Portsmouth, New Hampshire, where he had been held under sentence. On June 14, 1946, he was transferred to the Western State Penitentiary. See Act of April 28, 1887, P. L. 63, §10, 61 PS §495; Act of June 21, 1937, P. L. 1944, §6, as amended by the Act of March 26, 1945, P. L. 60, 61 PS §545-6. He was re-paroled from the Western State Penitentiary

on June 24, 1949, but he was subsequently returned to the penitentiary after pleading guilty to two charges of forgery upon which sentences were suspended.

The minutes of the court in which relator was sentenced on August 21, 1941, do not show that he was represented by counsel or that he was advised of his right to counsel. In disposing of the present case, it is not necessary to rely upon the presumption of regularity that the court discharged its state and federal duties to relator, including those relating to his right, if any, to the assistance of counsel. See *Bute v. Illinois,* 333 U. S. 640, 671, 672, 68 S. Ct. 763, 92 L. Ed. 986, 1003.

Relator relies solely on his youth and alleged inexperience to establish a denial of due process in the absence of counsel at the time he pleaded guilty to charges of burglary and attempted buglary. He attempted to create an issue of federal due process by adopting in his petition some of the language[1] appearing in *Uveges v. Pennsylvania,* 335 U. S. 437, 69 S. Ct. 184, 93 L. Ed. 127. In that case the Supreme Court of the United States, in an opinion by Mr. Justice REED, said (p. 441 of 335 U. S., pp. 131, 132 of 93 L. Ed.) : "Where the gravity of the crime and other factors—such as the age and education of the defendant, the conduct of the court or the prosecuting officials, and the complicated nature of the offense charged and the possible defenses thereto—render criminal proceedings without counsel so apt to result in injustice

---

[1] "Petitioner was young and inexperienced in the intricacies of criminal procedure when he pleaded guilty to [4] crimes which carried a maximum sentence of eighty years": *Uveges v. Pennsylvania,* 335 U. S. 437, 442, 69 S. Ct. 184, 93 L. Ed. 127, 132. The Supreme Court opinion does not refer to Uveges' extensive criminal experience. The plea notes in the Court of Oyer and Terminer of Allegheny County disclose that he had participated in 54 burglaries and 10 other violations of the criminal law.

as to be fundamentally unfair, the latter group [members of the Supreme Court of the United States] holds that the accused must have legal assistance under the [Fourteenth] Amendment whether he pleads guilty or elects to stand trial, whether he requests counsel or not."

Relator makes the contention frequently made by those seeking discharge on writs of habeas corpus—possibly resulting from oversimplification of the *Uveges* case—that lack of counsel, if associated with one or more of the factors above mentioned, constitutes per se a denial of due process of law. The Due Process Clause of the Fourteenth Amendment to the Federal Constitution is not susceptible to reduction to any such formula.[2]

To invalidate a plea of guilty in noncapital cases by reason of denial of due process arising from failure to provide a prisoner with counsel by the courts of this Commonwealth, the prisoner must establish that for want of benefit of counsel an ingredient of unfairness actively operated in the process that resulted in his confinement. *Foster v. Illinois,* 332 U. S. 134, 137, 67 S. Ct. 1716, 91 L. Ed. 1955, 1958; *Quicksall v. Michigan,* 339 U. S. 660, 70 S. Ct. 910, 94 L. Ed. 1188. In determining whether that ingredient exists, each case depends on its own facts. *Uveges v. Pennsylvania,* supra, 335 U. S. 437, 69 S. Ct. 184, 93 L. Ed. 127. As stated in *Betts v. Brady,* 316 U. S. 455, 462, 62 S. Ct. 1252, 1256, 86 L. Ed. 1595, 1602: "Asserted denial [of due process] is to be tested by an appraisal of the to-

---

[2] *Betts v. Brady,* 316 U. S. 455, 62 S. Ct. 1252, 86 L. Ed. 1595; *Lyons v. Oklahoma,* 322 U. S. 596, 602, 64 S. Ct. 1208, 88 L. Ed. 1481; *Townsend v. Burke,* 334 U. S. 736, 739, 68 S. Ct. 1252, 92 L. Ed. 1690; *Gibbs v. Burke,* 337 U. S. 773, 69 S. Ct. 1247, 93 L. Ed. 1686, 1691; *Com. ex rel. Master v. Baldi,* 166 Pa. Superior Ct. 413, 417, 72 A. 2d 150, allocatur refused 166 Pa. Superior Ct. xxiv, certiorari denied 340 U. S. 866, 71 S. Ct. 88, 95 L. Ed. 44.

tality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial." See *Com. ex rel. Hovis v. Ashe*, 165 Pa. Superior Ct. 30, 67 A. 2d 770, affirmed 364 Pa. 81, 70 A. 2d 630, certiorari denied 339 U. S. 970, 70 S. Ct. 990, 94 L. Ed. 1378. Again, in *Gallegos v. Nebraska*, 342 U. S. 55, 72 S. Ct. 141, 96 L. Ed. 82, 88, 89, Mr. Justice REED, speaking for the Supreme Court of the United States, said: "The Federal Constitution does not command a state to furnish defendants counsel as a matter of course, as is required by the Sixth Amendment in federal prosecutions. Lack of counsel at state noncapital trials denies federal constitutional protection only when the absence results in a denial to accused of the essentials of justice."

In the present case relator was youthful, and the charge was serious. However, these factors do not per se establish any element of unfairness in the proceedings resulting in his confinement. Nowhere does relator point out how he has been prejudiced or in what respect he suffered disadvantage or was handicapped in pleading to the indictments by reason of lack of counsel. Relator has not advanced, and from our own examination we cannot discover, any reason that would sustain a conclusion that the presence of counsel would have altered the disposition of his case. The narrative transcript of the evidence given at the time of the entry of the pleas shows that an officer related the facts which were admitted by both relator and his accomplice. The ensuing sentence to the Pennsylvania Industrial School at Camp Hill gave relator an opportunity for reformation and rehabilitation outside the penitentiary. Necessarily it was a general sentence. See Act of April 28, 1887, P. L. 63, §6, 61 PS §485; Act of June 21, 1937, P. L. 1944, §§5, 6, as amended, 61 PS

§§545-5, 545-6; *Com. ex rel. Brough v. Burke,* 168 Pa. Superior Ct. 119, 121, 78 A. 2d 25. Relator was given an opportunity to become a law-abiding member of society when he was paroled on August 14, 1942, after having served less than a year in the industrial school. If he had behaved himself properly thereafter, he would not have been subjected to any further imprisonment. However, he violated his parole by committing a criminal offense, and after being re-paroled on June 24, 1949, he engaged in further criminal activities. From an examination of the record and a consideration of the facts before us, relator has failed to show any denial of due process in the procedure that resulted in his confinement.

The order of the court below is affirmed.